UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CALENCE, LLC, <br><br>　　　　　Plaintiff, <br><br>　　v. <br><br>DIMENSION DATA HOLDINGS, *et al.*, <br><br>　　　　　Defendants. | CASE NO.  C06-0262RSM <br><br> ORDER GRANTING IN PART DEFENDANT DUNLAP'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

## I.  INTRODUCTION

This matter comes before the Court on defendant Judd Dunlap's Motion for Summary Judgment and plaintiff's related Motion for Partial Summary Judgment.  (Dkts. #200 and #218). Defendant essentially argues that there is no evidence to support any of the claims against him. Defendant highlights the fact that he was the last employee to receive an offer of employment from Dimension Data, and that his offer was received after the others had resigned; therefore, he argues, he is not similarly situated to the other individually-named defendants.

Plaintiff has moved for partial summary judgment against defendant Dunlap, asking the Court to find that he violated the Washington State Trade Secrets Act, breached the confidentiality provisions of his employment agreement, breached his fiduciary duty to maintain confidentiality, and violated the Computer Fraud and Abuse Act as a matter of law.

For the reasons set forth below, the Court DENIES plaintiff's motion for summary judgment and GRANTS IN PART defendant's motion for summary judgment.

## II.  DISCUSSION

ORDER
PAGE – 1

**A. Background**

This case involves allegations of corporate raiding and unfair competition. Plaintiff, Calence, LLC ("Calence"), is in the business of planning, building and managing customized computer network solutions and information technology infrastructures for businesses and public entities. Calence offers professional services, such as strategy, architecture, design and implementation, and management services, such as operational management and support, in the voice, data and security arena. Calence is also an authorized reseller of network and other IT products, in particular products manufactured by Cisco Systems. The individually-named defendants in this action, Thomas Falk, Jon Abb and Judd Dunlap, are former employees of Calence.

Defendant Dimension Data North America ("Dimension Data") is a wholly-owned subsidiary of Dimension Data Holdings, PLLC, a South African technology company. Dimension Data is also an authorized reseller of Cisco Systems products, and assists end user clients in selecting and implementing Cisco devices. Defendant Mark Zerbe is the Vice President of Sales, Western Area for Dimension Data North America.[1] Calence and Dimension Data, and businesses like them, are commonly referred to as Cisco Value Added Resellers ("VARs").

Plaintiff alleges that in October of 2005, corporate defendants "hatched a plot" to open a competing office in Seattle by stealing plaintiff's employees to staff that office. Plaintiff further alleges that the individually-named defendants assisted in that plan, providing corporate defendants with key financial and other confidential information which enabled them to lure its employees to corporate defendant's employ.

Plaintiff now seeks permanent injunctive relief, monetary relief, and costs and attorneys' fees based on defendants' alleged: (a) tortious interference with Calence contractual

---

[1] The Court refers to defendants Dimension Data and Mark Zerbe as the corporate defendants.

relationships with customers and employees, and fiduciary duties; (b) trade secret misappropriation; (c) violations of the Computer Fraud and Abuse Act ("CFAA"); (d) unfair competition under RCW 19.86 and common law; (e) civil conspiracy; (f) breach of contract; (g) breach of fiduciary duty; (h) conversion; and (i) unjust enrichment.

Corporate defendants assert that they did nothing wrong in offering plaintiff's former employee's new job opportunities, and that they did so without the assistance of the individually-named defendants. The individually-named defendants also assert that they did not improperly solicit any of their colleagues to work for corporate defendants, nor did they violate any company agreements by leaving plaintiff to work for corporate defendants. The individual defendants, as well as plaintiff's other former employees, also assert that they have not kept or used any confidential or trade secret information since they left the company.

The instant Order addresses arguments pertaining only to defendant Judd Dunlap.[2] Mr. Dunlap provides technical support for the security of the network systems sold by plaintiff and Dimension Data. He was the last employee to receive an offer from Dimension Data, and the last employee to resign.

**B. Motions to Strike**

As a threshold matter, the Court addresses plaintiff's various motions to strike:

*1. Improper Overlength Briefs*

Plaintiff requests that this Court strike all three of the individually-named defendants' motions for summary judgment because the motions were not filed in one combined brief, totaling no more than 36 pages. There is no basis for such a request. The individual defendants were never directed by this Court to file a single combined brief, and nothing in this Court's Local Rules requires that separate defendants file a combined motion.[3] Accordingly, the Court

---

[2] The remaining motions for summary judgment will be addressed in separate Orders.

[3] The Court notes that it often requires parties to file one motion for summary judgment containing all legal arguments when it is apparent that the parties have filed several separate

ORDER
PAGE – 3

DENIES plaintiff's request.

### 2. Rule 56(f) Continuance

Plaintiff next argues that it needs more time to review recently-produced discovery should this Court contemplate granting any portion of defendant's motion for summary judgment. The Court DENIES this request. The Ninth Circuit has explained that in order to prevail on a Rule 56(f) motion, the party opposing a motion for summary judgment "must make (a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists." *Emplrs. Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1129 (2004) (citing *VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir. 1986)). In addition, "[t]he burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence exists, and that it would preclude summary judgment." *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001). Plaintiff makes no attempt to satisfy this standard, and fails to identify any information it believes it may find with respect to any of its claims against defendant.

### 3. Section 7 Defense

Plaintiff next argues that this Court should strike the portion of defendant's motion that relies on Section 7 of the National Labor Relations Act, 29 U.S.C. § 157, as a defense to plaintiff's tortious interference claim. Plaintiff asserts that it is being "sandbagged" by this argument, and that defendant should be estopped from asserting it because the Court has already ruled that defendant cannot amend his Answer to include Section 7 as an affirmative defense. As an initial matter, the Court notes that defendant's motion for summary judgment was filed prior to the Court's Order denying defendants' motion to amend. Second, the Court is not persuaded that plaintiff has been "sandbagged" in any manner, as it has been free to argue

---

motions in an attempt to circumvent the 24-page limit. This does not appear to be such a case.

ORDER
PAGE – 4

in its responsive briefs why the statute does not apply as a matter of law to its tortious interference claim. Accordingly, the Court DENIES plaintiff's request to strike the portion of defendant's motion that relies on Section 7 of the National Labor Relations Act.

### *4. Mittenthal Declarations*

Plaintiff initially moved to strike the Mittenthal Declaration submitted in support of defendant's motion for summary judgment, on the basis that it purports to provide expert testimony and Mr. Mittenthal was never disclosed as an expert witness. Defendant then withdrew the declaration, and submitted a new declaration with his Reply in support of his motion for summary judgment. Plaintiff has moved to strike that second declaration on the basis that it is irrelevant, lacks foundation and contains inadmissible hearsay. The Court agrees. Accordingly, the Court GRANTS plaintiff's motion to strike. The Court will not consider the Mittenthal Declaration submitted in support of defendant's Reply brief.

### *5. Alleged Interference with Business Expectancies*

Finally, plaintiff asks this Court to strike defendant's argument that plaintiff did not plead tortious interference with business expectancies in its Amended Complaint. It appears that plaintiff is simply making a responsive argument to one of the issues defendants have raised in their motions. The Court will assess whether defendants' argument has any merit in the context of it analysis set forth below. Accordingly, the Court DENIES plaintiff's motion to strike.

## C. Standard of Review for Summary Judgment

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986). The Court must draw all reasonable inferences in favor of the non-moving party. *See F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds,* 512 U.S. 79 (1994). The moving party has the burden of demonstrating the absence of a

genuine issue of material fact for trial. *See Anderson*, 477 U.S. at 257. Mere disagreement, or the bald assertion that a genuine issue of material fact exists, no longer precludes the use of summary judgment. *See California Architectural Bldg. Prods., Inc., v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).

Genuine factual issues are those for which the evidence is such that "a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. Material facts are those which might affect the outcome of the suit under governing law. *See id.* In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *O'Melveny & Meyers*, 969 F.2d at 747). Furthermore, conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment. *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 60 F. 3d 337, 345 (9th Cir. 1995). Similarly, hearsay evidence may not be considered in deciding whether material facts are at issue in summary judgment motions. *Blair Foods, Inc. v. Ranchers Cotton Oil,* 610 F. 2d 665, 667 (9th Cir. 1980).

**D. Tortious Interference**

In its Amended Complaint, plaintiff first alleges that defendants knowingly and intentionally, and with malicious and improper motive: (1) acted to interfere with and misappropriate Calence's contractual relationships with the customers of its Seattle office; (2) acted to induce the breach of each other's contracts with Calence; (3) acted to induce the breaches of Calence's employment contracts with each of the other terminating employees; (4) acted to induce each other's breaches of fiduciary duty; and (5) acted to induce breaches of fiduciary duty and other contractual duties by the other terminating employees. (Dkt. #127 at 19-20).

In *Pleas v. Seattle*, 112 Wn.2d 794 (1989), the Washington Supreme Court adopted the Oregon Supreme Court's approach to tortious interference claims, holding that:

> a cause of action for tortious interference arises from either the defendant's pursuit of an improper objective of harming the plaintiff or the use of wrongful means that in fact cause injury to plaintiff's contractual or business relationships. A claim for tortious interference is established when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself. Defendant's liability may arise from improper motives or from the use of improper means. . . . No question of privilege arises unless the interference would be wrongful but for the privilege . . . Even a recognized privilege [however] may be overcome when the means used by defendant are not justified by the reason for recognizing the privilege.
>
> Interference can be "wrongful" by reason of a statute or other regulation, or a recognized rule of common law, or an established standard of trade or profession. Therefore, plaintiff must show not only that the defendant intentionally interfered with his business relationship, but also that the defendant had a "duty of non-interference; *i.e.*, that he interfered for an improper purpose . . . or . . . used improper means . . .".

Pleas, 112 Wn.2d at 803-04 (citations omitted).

As an initial matter, the Court agrees with defendant that plaintiff has failed to allege tortious interference with a business expectancy. It is clear from the language of the Amended Complaint, that plaintiff's focus is on alleged interference with contractual relationships. Moreover, while plaintiff attempts to persuade the Court to the contrary, (*see* Dkt. #273 at 2-3), the allegation that defendants have induced others to breach their fiduciary duties does not give notice to defendants of an alleged interference with a business expectancy. Indeed, the very elements required to prove such a claim demonstrates the trouble with plaintiff's argument. In *Calbom v. Knudtzon*, 65 Wn.2d 157 (1964), the Washington Supreme Court explained that to make a claim for tortious interference with a business expectancy, a plaintiff must point to an expectancy of business with a third party, plaintiff must allege that defendant was aware of the expectancy, and plaintiff must allege that defendant interfered with the expectancy. *Calbom*, 65 Wn.2d at 164-65. Here, plaintiff fails to allege any of those elements. Accordingly, the Court focuses only on allegations that defendants interfered with plaintiff's contractual relationships.

In that regard, plaintiff lacks any evidence of tortious interference. Plaintiff points to no evidence in the record that defendant interfered with the contractual relationships between

ORDER
PAGE – 7

plaintiff and the individually-named co-defendants or between plaintiff and the other former employees. Indeed, defendant was the last of the employees to receive an offer from Dimension Data, and he received that offer only after the other employees had already resigned. Thus, the Court believes that no reasonable jury could find that defendant interfered with the former employees' contractual relationships with plaintiff.

Further, plaintiff points to no evidence in the record from which this Court can find, or infer, that defendant induced any of plaintiff's customers to breach a contractual relationship with plaintiff. Even assuming that defendant possessed confidential and proprietary information on the CDs he burned from his home computer, which apparently forms the basis of the tortious interference claim, plaintiff has not produced any evidence that such information was used by defendant to directly compete or help others compete for the business of plaintiff's customers. Mere speculation that he did so is not enough to survive summary judgment. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 n.10 (9th Cir. 2002) (noting that the party opposing summary judgment must come forward with more than mere "speculation, conjecture, or fantasy"). Accordingly, the Court finds that summary judgment in favor of defendant on this claim is appropriate.

### E. Misappropriation of Trade Secrets

Plaintiff next alleges that defendant has misappropriated, and continues to intentionally misappropriate, its trade secrets, in violation of the Washington Uniform Trade Secrets Act ("UTSA"), RCW 19.108, *et seq.* (Dkt. #127 at 20). Plaintiff argues that defendant misappropriated plaintiff's trade secrets on four separate occasions when he: (1) copied and removed them from plaintiff's premises without prior written authorization; (2) loaded them onto his home computer; (3) returned the two CD-ROMS to Tom Falk instead of directly to counsel; and (4) destroyed the files on his home computer while this lawsuit was pending.

As an initial matter, the Court notes that there is a question of fact as to whether any trade secrets were contained on the disks at issue in this case. As plaintiff itself acknowledges,

whether a particular piece of information is a trade secret, is a question of fact for the jury. *Ed Nowogroski Ins., Inc. v. Rucker*, 137 Wn.2d 427, 436 (1999). That reason alone is enough to deny summary judgment. Indeed, should a jury determine that no trade secrets were contained on the disks, the claim against defendant necessarily fails.

Further, even presuming that defendant did possess plaintiff's trade secrets, there are significant questions of fact as to whether such trade secrets were misappropriated. Under the UTSA, a misappropriation is defined as the:

> (a) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (b) Disclosure or use of a trade secret of another without express or implied consent by a person who:
>
>   (i) Used improper means to acquire knowledge of the trade secret; or
>
>   (ii) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was (A) derived from or through a person who had utilized improper means to acquire it, (B) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or (C) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
>
>   (iii) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

RCW 19.108.010(2); *McLeod v. Northwest Alloys, Inc.*, 90 Wn. App. 30, 35-36 (1998).

In this case, plaintiff and defendant dispute whether the information was obtained improperly. Defendant has produced evidence that he removed information from his office on a regular basis due to the nature of his job, that such removal was authorized and condoned by his manager, that he regularly backed up information on his home computer, and that such action was also condoned by his office manager. Plaintiff has produced evidence that no authorization for defendant's actions was ever given, and that such action was expressly forbidden by company policy. Accordingly, the Court does not believe that summary judgment in favor of either party on this claim is appropriate.

ORDER
PAGE – 9

**F. Unfair Competition**

By essentially reiterating its arguments with respect to tortious interference and misappropriation of trade secrets, plaintiff next alleges that defendants' actions constitute unfair trade practices under RCW 19.86.020 and .030 and under the common law. (Dkt. #127 at 21). For the reasons set forth above with respect to UTSA claim, the Court finds that summary judgment on the unfair competition claim is also not appropriate.

**G. Civil Conspiracy**

Plaintiff next alleges that defendants "conspired among themselves and with others to, among other things, interfere with Calence's relationships with its customers, interfere with Calence's contractual relationships with its employees, induce breaches of fiduciary duty by Calence employees, and misappropriate Calence's trade secrets." (Dkt. #127 at 21).

> To establish a civil conspiracy, [plaintiff] must prove by clear, cogent, and convincing evidence that (1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the conspiracy. "Mere suspicion or commonality of interests is insufficient to prove a conspiracy." "[When] the facts and circumstances relied upon to establish a conspiracy are as consistent with a lawful or honest purpose as with an unlawful undertaking, they are insufficient."

*All Star Gas, Inc. v. Bechard*, 100 Wn. App. 732, 740 (2000) (citations omitted).

Plaintiff fails to raise any genuine issue of material fact with respect to its civil conspiracy claim against defendant. Plaintiff argues that defendant's alleged misappropriation of CD-ROMs that were clearly marked "confidential" and "proprietary" constitutes a part of the conspiracy with the other defendants to harm Calence. However, plaintiff points to no evidence in the record of any agreement between any of the defendants to accomplish any unlawful purpose, or any agreement to conspire to commit an unlawful purpose. Indeed, the only evidence plaintiff relies on in opposition to summary judgment are two short excerpts of Jon Abb's deposition testimony pertaining to an Expedia.com account. (Dkt. #246 at 14) (citing to

Dkt. #216 at 160-61 and Dkt. #252, Ex. OO).[4]  It is not clear how that evidence even relates to defendant, let alone demonstrates any kind of conspiracy between defendant and any others. Accordingly, the Court agrees with defendant that summary judgment in his favor on this claim is appropriate.

**H.  Breach of Contract**

Plaintiff next alleges that defendant breached his contractual obligations to Calence, including his agreement not to disclose or utilize for their own benefit or for the benefit of a third party the confidential information of Calence; his agreement not to solicit or aid others to solicit employees of Calence to accept competitive employment; his agreement not to induce or aid others to induce employees of Calence to terminate their employment; and his agreement not to interfere with Calence's business.  (DKT. #127 at 22).

Defendant first asserts that there is no agreement between defendant and plaintiff, and plaintiff may not enforce a previously-signed agreement, which was signed by defendant when he began his employment with Avnet prior to the merger between Avnet and Calence. Accordingly, defendant argues that there can be no claim for breach of contract.  Defendant then argues that, even if there was an enforceable contract, he has not breached any of its provisions.

The Court first turns to whether an enforceable contract exists.  There is no dispute that defendant signed a Confidentiality and Development Agreement as an employee of Avnet.  (*See* Dkt. #209, Ex. #19).  That agreement contained a provision stating that defendant agreed not to induce or aid others to induce any employee to terminate his or her employment or violate his or her employment agreement in any way.  Defendant also agreed not to solicit or aid others to

---

[4] The Court further notes that plaintiff's purported reliance on the Abb Deposition pages 222:17-225:18 are not actually found at the document to which plaintiff cites.  (*See* Dkt. #216 at 160-61).  Thus, the Court is left to wonder what evidence is actually being propounded by plaintiff.  In any event, the portion of the Abb Deposition found at that citation – Dkt. #216, pages 160-61 – reflects a discussion about an Expedia.com account.

ORDER
PAGE – 11

solicit employment of any employee. However, defendant argues that the contract was not assigned to Calence as part of the merger between Calence and Avnet, and could not be assigned because it contained a restrictive covenant. The Court disagrees.

The plain language of the Asset Contribution Agreement makes clear that all contracts were assigned from Avnet to the newly merged company. (Dkt. #209, Ex. 21). That agreement assigns "all contracts and agreements to which Avnet is a party" including those contracts set forth in specific schedules. The fact that defendant's contract was not among those listed on the schedules does not exclude it from the agreement. Rather, the agreement references all contracts and agreements, and simply chooses to name some contracts specifically.

Likewise, the Court finds the assignment of the agreement lawful. Generally, in Washington, contract rights "may be freely assigned unless forbidden by statute or rendered ineffective for public policy reasons. An assignee of a contract 'steps into the shoes of the assignor, and has all of the rights of the assignor.'" *Federal Fin. Co. v. Gerard*, 90 Wn. App. 169, 177 (1998) (citations omitted). Many other jurisdictions find such assignments lawful, as well. *See, e.g., Special Products Mfg., Inc. v. Douglass*, 159 A.D.2d 847, 849 (N.Y. App. Div. 1990) (explaining that "[w]hen the original parties to an agreement so intend, a covenant not to compete is freely assignable."); *Gill v. Poe & Brown of Ga.*, 241 Ga. App. 580, 582 (Ga. Ct. App. 1999) (finding no merit in plaintiff's claim that the non-solicitation agreement could not be assigned without his consent). Accordingly, the Court agrees with plaintiff that plaintiff had an enforceable agreement with defendant.

However, as discussed above, there is no evidence that defendant solicited or aided in soliciting any of the other employees to breach their own employment agreements. Thus, that allegation cannot form the basis of a breach of contract claim. Further, there is no evidence that defendant disclosed any of the information to third parties. There is no evidence that copies of the disks were ever made, and there is no evidence that defendant misused the information. Thus, even assuming that the information defendant downloaded from his computer was

confidential or proprietary, there is no evidence that defendant breached his confidentiality agreement. Simply possessing confidential information is not unlawful. Accordingly, the Court finds that summary judgment in favor of defendant on this claim is appropriate.

### I. Breach of Duty of Loyalty and Fiduciary Duty

Plaintiff next alleges that defendant breached his duty of loyalty and fiduciary duties to Calence by, among other things, entering into a conspiracy with corporate defendants, misappropriating Calence's valuable confidential information and customer relationships, and interfering with Calence's contractual relationships with its employees and customers. (Dkt. #127 at 22). In particular, plaintiff argues that defendant breached his duty of loyalty and other fiduciary duties by taking confidential and proprietary information and providing it to a competitor.

As an initial matter, the Court finds that the conspiracy allegation may not support this claim, as the Court has already determined above that there is no evidence to support the conspiracy claim.

Likewise, there is no evidence that defendant provided any confidential or proprietary information to a competitor. Plaintiff speculates that copies of the disks defendant returned to defendant Falk may have been made and given to Dimension Data, and plaintiff further speculates that information may have made its way from defendant to another employee Mr. Martin, and from Mr. Martin to another employee Ms. Morse. However, there is no direct evidence of any of these actions, nor is there any evidence provided from which this Court could infer such actions. As noted previously, mere speculation is not enough to survive summary judgment. *Villiarimo*, 281 F.3d at 1065 n.10. Accordingly, the Court finds that summary judgment in favor of defendant on this claim is appropriate.

### J. Conversion and Replevin

Plaintiff next alleges that defendant has "appropriated Calence's confidential information without Calence's knowledge and consent, and without legal justification" and that defendant is

"using and will use this information to harm Calence and benefit Defendants." (Dkt. #127 at 23). Plaintiff apparently bases its claim against defendant on his possession of information he loaded from his laptop computer onto his home computer, which he subsequently copied onto two CD-ROMs. Those disks were subsequently returned to defendants' counsel in the course of litigation in this Court, and the information on defendant's home computer was permanently deleted.

Defendant argues that a replevin claim cannot succeed because there is no evidence that he continues to possess any of plaintiff's property. In its response, plaintiff ignores that argument, and focuses only on the conversion claim. Therefore, the Court deems the replevin claim conceded, and turns to the conversion claim.

Conversion is the unjustified, willful interference with a chattel which deprives a person entitled to the property of possession. *Meyers Way Dev. Ltd. P'ship v. Univ. Sav. Bank*, 80 Wn. App. 655, 674-75(1996), *review denied*,130 Wn.2d 1015 (1996). "The burden is on the plaintiff to establish ownership and a right to possession of the converted property. . . . [T]o maintain a conversion action, the plaintiff need only establish 'some property interest in the goods allegedly converted.'" *Id.* at 675 (citations omitted). Plaintiff's sole basis for its conversion claim against defendant appears to be the two CD-ROMs he continued to possess for a short time after resigning his employment. Plaintiff argues that defendant willfully deprived it of its property during the time he was in possession of those disks, and therefore he is liable for any damages that resulted.

Plaintiff ignores the fact that it was in full possession of the information contained on the CD ROMs, even while defendant held those disks, because plaintiff retained possession of the laptop from which all of the information was downloaded when defendant resigned his employment. That fact is fatal to plaintiff's claim. Indeed, "an owner [cannot] state a claim for conversion when it retains originals or other copies of documents another improperly uses because the owner is not deprived of the beneficial use of the information." *Furash & Co., Inc.*

*v. McClave*, 130 F. Supp.2d 48, 58 (D.D.C. 2001) (citing *Pearson v. Dodd*, 410 F.2d 701, 706 (D.C. Cir. 1969)). Accordingly, the Court finds that plaintiff's claims fails as a matter of law, and summary judgment in favor of defendant is appropriate.

### K. Unjust Enrichment

Plaintiff next alleges that defendant's "actions have unjustly enriched Dimension, Falk, Abb and Dunlap at the expense of Calence." (Dkt. #127 at 23). "Unjust enrichment occurs when one retains money or benefits which in justice and equity belong to another. The doctrine also applies to retention of property or benefits." *Bailie Communications v. Trend Business Sys.*, 61 Wn. App. 151, 160 (1991).

Defendant argues that plaintiff cannot show he was unjustly enriched, and, to the extent that he received a higher salary at Dimension Data, he is entitled to such. In response, plaintiff has asserted in conclusory fashion, "[t]he evidence taken in the light most favorable to Calence, is that Dunlap improperly enriched himself at the expense of Calence." (Dkt. #246 at 19). However, plaintiff does not specify what that evidence is, or how defendant was unjustly enriched. Indeed, plaintiff does not even identify whether its claim is based on the improper retention of money, property or benefits. Plaintiff simply lays out the legal standard, and then urges the Court to conclude that defendant has been unjustly enriched. Based on plaintiff's briefing and the record presented, it is impossible for this Court to identify any basis for an unjust enrichment claim against defendant. Accordingly, the Court agrees with defendant that summary judgment in his favor is appropriate.

### L. Computer Fraud and Abuse Act

Finally, plaintiff alleges that defendant violated two provisions of the Computer Fraud and Abuse Act – 18 U.S.C. § 1030 (a)(2)(C) and (a)(4). (Dkt. #127 at 23-24). As an initial matter, the Court addresses the scope of the Computer Fraud and Abuse Act. Defendant suggests that this criminal statute was not intended to reach situations such as the instant one. While the

1  Court acknowledges that federal courts around the country appear to be at odds as to the extent
2  of the scope of civil claim under the statute, this Court has generally accepted the notion that
3  Congress intended to encompass actions such as those allegedly taken by defendant. *Shurgard*
4  *Storage Centers, Inc. v. Safeguard Self Storage, Inc.*, 119 F. Supp.2d 1121, 1127-29 (W.D.
5  Wash. 2000). The Court is aware of no binding authority to the contrary. Accordingly, the
6  Court proceeds to an analysis of the allegations in this case.

7  Section 1030(a)(2)(C) punishes those who intentionally access a protected computer
8  without authorization or in excess of his or her authorization, thereby obtaining information, if
9  the conduct involves interstate or foreign communication. *See* 18 U.S.C. § 1030(a)(2)(C).
10 Section (a)(4) punishes those who knowingly and with intent to defraud access a protected
11 computer without authorization or in excess of his or her authorization, and by means of such
12 conduct furthers the intended fraud. *See* 18 U.S.C. § 1030(a)(4). For the reasons set forth
13 above, the Court finds genuine questions of material fact with respect to defendant's
14 authorization to access the computers in question.

15 Further the Court finds that genuine questions of fact have been raised with respect to
16 defendant's intent. Section (a)(4) is applicable only to those who access a protected computer
17 with an intent to defraud. Defendant has produced evidence that he back up the information on
18 his laptop as a precaution before certain steps were taken in the merger between Avnet and
19 Calence. Plaintiff has produced evidence questioning that motive. Accordingly, the Court finds
20 that summary judgment is not appropriate on this claim.

## III.  CONCLUSION

23 Having considered plaintiff's and defendant's motions for summary judgment, the briefs
24 and evidence in support and opposition of those motions, and the remainder of the record, the
25 Court hereby ORDERS:
26 (1) Defendant's Motion for Summary Judgment (Dkt. #200) is GRANTED IN PART.

1  For the reasons set forth above, the Court hereby DISMISSES plaintiff's claims for tortious
2  interference, civil conspiracy, breach of contract, breach of fiduciary duties, conversion and
3  replevin, and unjust enrichment against defendant Judd Dunlap.  All other claims against him
4  remain pending for resolution at trial

5  (2)  Plaintiff's Motion for Summary Judgment with respect to defendant Dunlap (Dkt.
6  #218) is DENIED for the reasons discussed above.

7  (3)  The Clerk SHALL direct a copy of this Order to all counsel of record.
8  DATED this  16   day of May, 2007.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER
PAGE – 17