UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CALENCE, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>DIMENSION DATA HOLDINGS, *et al.*,<br><br>    Defendants. | CASE NO. C06-0262RSM<br><br>ORDER GRANTING IN PART DEFENDANT ABB'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

## **I.  INTRODUCTION**

This matter comes before the Court on defendant Jon Abb's Motion for Summary Judgment and plaintiff's related Motion for Partial Summary Judgment. (Dkts. #198 and #218). Defendant essentially argues that because he was an at-will employee, who never signed an employment agreement or non-compete or non-solicitation agreement with plaintiff, there is no support for any of the claims against him.

Plaintiff has moved for partial summary judgment against defendant Abb, asking the Court to find that he violated the Washington Uniform Trade Secrets Act ("UTSA"), breached the confidentiality provisions of his employment agreement, breached his fiduciary duty to maintain confidentiality, and violated the Computer Fraud and Abuse Act ("CFAA") as a matter of law.

For the reasons set forth below, the Court DENIES plaintiff's motion for summary judgment and GRANTS IN PART defendant's motion for summary judgment.

## **II.  DISCUSSION**

**A. Background**

The Court has set forth the background of this action in its previous Orders, and will not repeat it here. Facts specifically relevant to the instant defendant will be discussed in context below. This Order addresses arguments pertaining only to defendant Jon Abb.[1] Mr. Abb was employed as an Account Manager with plaintiff prior to his resignation.

**B. Motions to Strike**

Plaintiff raises the same motions to strike with respect to defendant Abb's briefing and arguments as it raised with respect to defendant Dunlap's briefing and arguments. The decisions made on those motions to strike, as set forth in the Court's Order on defendant Dunlap's motion for summary judgment, apply with equal force to the instant motion, and they will not be repeated here. (*See* Dkt. #319).

**C. Standard of Review for Summary Judgment**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The Court must draw all reasonable inferences in favor of the non-moving party. *See F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds*, 512 U.S. 79 (1994). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *See Anderson*, 477 U.S. at 257. Mere disagreement, or the bald assertion that a genuine issue of material fact exists, no longer precludes the use of summary judgment. *See California Architectural Bldg. Prods., Inc., v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).

Genuine factual issues are those for which the evidence is such that "a reasonable jury

---

[1] The remaining motions for summary judgment will be addressed in separate Orders.

could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. Material facts are those which might affect the outcome of the suit under governing law. *See id.* In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc*., 41 F.3d 547, 549 (9th Cir. 1994) (citing *O'Melveny & Meyers*, 969 F.2d at 747). Furthermore, conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment. *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 60 F. 3d 337, 345 (9th Cir. 1995). Similarly, hearsay evidence may not be considered in deciding whether material facts are at issue in summary judgment motions. *Blair Foods, Inc. v. Ranchers Cotton Oil,* 610 F. 2d 665, 667 (9th Cir. 1980).

**D. Tortious Interference**

In its Amended Complaint, plaintiff first alleges that defendant knowingly and intentionally, and with malicious and improper motive: (1) acted to interfere with and misappropriate Calence's contractual relationships with the customers of its Seattle office; (2) acted to induce the breach of each other's contracts with Calence; (3) acted to induce the breaches of Calence's employment contracts with each of the other terminating employees; (4) acted to induce each other's breaches of fiduciary duty; and (5) acted to induce breaches of fiduciary duty and other contractual duties by the other terminating employees. (Dkt. #127 at 19-20).

In *Pleas v. Seattle*, 112 Wn.2d 794 (1989), the Washington Supreme Court adopted the Oregon Supreme Court's approach to tortious interference claims, holding that:

> a cause of action for tortious interference arises from either the defendant's pursuit of an improper objective of harming the plaintiff or the use of wrongful means that in fact cause injury to plaintiff's contractual or business relationships. A claim for tortious interference is established when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself. Defendant's liability may arise from improper motives or from the use of improper means. . . . No question of privilege arises unless the interference would be wrongful but for the privilege . . . Even a recognized privilege [however] may be overcome when the

ORDER
PAGE – 3

>means used by defendant are not justified by the reason for recognizing the privilege.
>
>Interference can be "wrongful" by reason of a statute or other regulation, or a recognized rule of common law, or an established standard of trade or profession. Therefore, plaintiff must show not only that the defendant intentionally interfered with his business relationship, but also that the defendant had a "duty of non-interference; *i.e.*, that he interfered for an improper purpose . . . or . . . used improper means . . . ".

Pleas, 112 Wn.2d at 803-04 (citations omitted).

As an initial matter, the Court agrees with defendant that plaintiff has failed to allege tortious interference with a business expectancy. It is clear from the language of the Amended Complaint, that plaintiff's focus is on alleged interference with contractual relationships. Moreover, while plaintiff attempts to persuade the Court to the contrary, (*see* Dkt. #273 at 2-3), the allegation that defendants have induced others to breach their fiduciary duties does not give notice to defendants of an alleged interference with a business expectancy. Indeed, the very elements required to prove such a claim demonstrates the trouble with plaintiff's argument. In *Calbom v. Knudtzon*, 65 Wn.2d 157 (1964), the Washington Supreme Court explained that to make a claim for tortious interference with a business expectancy, a plaintiff must point to an expectancy of business with a third party, plaintiff must allege that defendant was aware of the expectancy, and plaintiff must allege that defendant interfered with the expectancy. *Calbom*, 65 Wn.2d at 164-65. Here, plaintiff fails to allege any of those elements. Accordingly, the Court focuses only on allegations that defendants interfered with plaintiff's contractual relationships.

In that regard, the Court finds that there are genuine issues of material fact as to whether defendant interfered with the contractual relationships between plaintiff and the individually-named co-defendants or between plaintiff and the other former employees. Plaintiff has produced evidence that defendant had conversations with co-defendants Tom Falk and Mark Zerbe about recruiting fellow employees, and suggested appropriate compensation and bonuses for those employees. Plaintiff has also produced evidence that defendant drove fellow employees to the Dimension Data job fair, and encouraged fellow employees to accept offers

from Dimension Data. While defendant argues with the characterization of that evidence, it is up to the trier of fact to assess the credibility of the witnesses and determine what actually happened in each alleged instance.

Further, plaintiff points to evidence in the record from which this Court can infer that defendant intended to induce customers to breach a contractual relationship with plaintiff. Abb contacted approximately two dozen of his customers to inform them that he was leaving, both prior to his official resignation with plaintiff and afterwards. Further, plaintiff has produced evidence that defendant retained confidential information and continued to use that information in contacting his former customers. Accordingly, the Court finds that summary judgment in favor of defendant on this claim is not appropriate.

**E. Misappropriation of Trade Secrets**

Plaintiff next alleges that defendant has misappropriated, and continues to intentionally misappropriate, its trade secrets, in violation of the Washington Uniform Trade Secrets Act ("UTSA"), RCW 19.108, *et seq.* (Dkt. #127 at 20). Specifically, plaintiff argues that the information retained by defendant on his Blackberry device, including customer contact lists and e-mails, constitutes trade secrets.

As an initial matter, the Court notes that there is a question of fact as to whether any trade secrets were contained on the disks at issue in this case. As plaintiff itself acknowledges, whether a particular piece of information is a trade secret, is a question of fact for the jury. *Ed Nowogroski Ins., Inc. v. Rucker*, 137 Wn.2d 427, 436 (1999). That reason alone is enough to deny summary judgment. Indeed, should a jury determine that no trade secrets were contained on the Blackberry, the claim against defendant necessarily fails.

Further, even presuming that defendant did possess plaintiff's trade secrets, there are significant questions of fact as to whether such trade secrets were misappropriated. Under the UTSA, a misappropriation is defined as the:

(a) Acquisition of a trade secret of another by a person who knows or has

ORDER
PAGE – 5

    reason to know that the trade secret was acquired by improper means; or

    (b) Disclosure or use of a trade secret of another without express or implied consent by a person who:

        (i) Used improper means to acquire knowledge of the trade secret; or

        (ii) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was (A) derived from or through a person who had utilized improper means to acquire it, (B) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or (C) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

        (iii) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

RCW 19.108.010(2); *McLeod v. Northwest Alloys, Inc.*, 90 Wn. App. 30, 35-36 (1998).

In this case, plaintiff and defendant dispute whether the information was obtained improperly. Defendant has produced evidence that the information he retained on his Blackberry device was assembled and kept with his employer's permission. Plaintiff has produced evidence that no authorization for defendant's actions was ever given, and that such action was expressly forbidden by company policy. Accordingly, the Court does not believe that summary judgment in favor of either party on this claim is appropriate.

**F. Unfair Competition**

By essentially reiterating its arguments with respect to tortious interference and misappropriation of trade secrets, plaintiff next alleges that defendants' actions constitute unfair trade practices under RCW 19.86.020 and .030 and under the common law. (Dkt. #127 at 21). For the reasons set forth above with respect to the tortious interference and UTSA claim, the Court finds that summary judgment on the unfair competition claim is also not appropriate.

**G. Civil Conspiracy**

Plaintiff next alleges that defendants "conspired among themselves and with others to, among other things, interfere with Calence's relationships with its customers, interfere with

ORDER
PAGE – 6

Calence's contractual relationships with its employees, induce breaches of fiduciary duty by Calence employees, and misappropriate Calence's trade secrets." (Dkt. #127 at 21).

> To establish a civil conspiracy, [plaintiff] must prove by clear, cogent, and convincing evidence that (1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the conspiracy. "Mere suspicion or commonality of interests is insufficient to prove a conspiracy." "[When] the facts and circumstances relied upon to establish a conspiracy are as consistent with a lawful or honest purpose as with an unlawful undertaking, they are insufficient."

*All Star Gas, Inc. v. Bechard*, 100 Wn. App. 732, 740 (2000) (citations omitted).

Plaintiff fails to raise any genuine issue of material fact with respect to its civil conspiracy claim against defendant. Plaintiff argues in sweeping terms that it is "entitled to reasonable inferences based upon defendants' statements and records and circumstantial evidence" that the first element of a civil conspiracy has been satisfied. However, plaintiff points to no evidence in the record of any agreement between any of the defendants to accomplish any unlawful purpose, or any agreement to conspire to commit an unlawful purpose. Further, plaintiff provides no meaningful citation to specific portions of the record. Indeed, plaintiff cites to "Dkt. #216 at 218, 417-21" in support of its assertion that "there can be no doubt about an agreement among the defendants." (Dkt. #244 at 15). However, the declaration contained at Dkt. #216 does not utilize that system of pagination; therefore, it is not clear what evidence plaintiff relies on. In any event, a review of the numerous exhibits contained in that document suggests that the evidence plaintiff relies on is an e-mail from former Calence employee Chad Marsh to Mark Zerbe asking questions about Dimension Data account manager ratios. (Dkt. #216, Ex. P). It is not clear how that evidence relates at all to the instant defendant, or how it supports a civil conspiracy claim. Plaintiff also appears to point to an e-mail from Mark Zerbe to other Dimension Data executives noting that he had successfully recruited Abb, and that there was a plan in place to recruit other Seattle employees. (Dkt. #216, Ex. KK). However, a hearsay statement by Mr. Zerbe is not sufficient to create an inference that Jon Abb had conspired to

ORDER
PAGE – 7

accomplish an unlawful purpose or a lawful purpose by unlawful means. Accordingly, the Court agrees with defendant that summary judgment in his favor on this claim is appropriate.

### H. Breach of Contract

Plaintiff next alleges that defendant breached his contractual obligations to Calence, including his agreement not to disclose or utilize for his own benefit or for the benefit of a third party the confidential information of Calence; his agreement not to solicit or aid others to solicit employees of Calence to accept competitive employment; his agreement not to induce or aid others to induce employees of Calence to terminate their employment; and his agreement not to interfere with Calence's business. (DKT. #127 at 22).

Defendant first asserts that there is no agreement between defendant and plaintiff, and that plaintiff may not enforce a previously-signed agreement, which was signed by defendant when he began his employment with Kent Datacomm ("Kent") prior to the mergers between Kent and Avnet, and later Avnet and Calence. Accordingly, defendant argues that there can be no claim for breach of contract. Defendant then argues that, even if there was an enforceable contract, he has not breached any of its provisions.

The Court first turns to whether an enforceable contract exists. There is no dispute that defendant signed an employment agreement, containing a restrictive covenant, when hired by Kent in 1998. (Dkt. #203, Ex. A). That agreement contained provisions stating that defendant agreed not to disclose to an unauthorized person confidential information, and that defendant agreed not to induce or aid others to induce any employee to terminate his or her employment or violate his or her employment agreement in any way. (Dkt. #203, Ex. A). However, defendant argues that the contract was not assigned to Avnet as part of the merger between Kent and Avnet, or subsequently to Calence as part of the merger between Calence and Avnet. Defendant further argues that it could not be assigned because it contained a restrictive covenant. The Court disagrees.

The merger between Kent and Avnet occurred in 2001. The parties' Plan of Merger is

governed by Texas law. (Dkt. #252, Ex. KKK at § 7.07). Under Texas law, the surviving corporation of a merger "represents the continuation of a business that was operated before in the form of its constituents. For practical, business, and many tax purposes, it is treated the same as its components which formed it. It accedes to the rights and privileges as well as the obligations of its components by operation of law." *Reliance Ins. Co. v. Nutt*, 403 S.W.2d 828, 830 (Tex. App. 1966) (citation omitted). Further, under the Texas Business Corporation Act, when a merger takes place:

> all liabilities and obligations of each domestic or foreign corporation and other entity that is a party to the merger shall be allocated to one or more of the surviving or new domestic or foreign corporations and other entities in the manner set forth in the plan of merger, and each surviving or new domestic or foreign corporation, and each surviving or new other entity to which a liability or obligation shall have been allocated pursuant to the plan of merger, shall be the primary obligor therefor and, except as otherwise set forth in the plan of merger or as otherwise provided by law or contract, no other party to the merger, other than a surviving domestic or foreign corporation or other entity liable thereon at the time of the merger and no other new domestic or foreign corporation or other entity created thereby, shall be liable therefor.

Tex. Bus. Corp. Act art. 5.06(A)(3). The Plan of Merger allocated all liabilities and obligations to the newly formed Avnet. Accordingly, the Court agrees that defendant's employment agreement transferred to Avnet.

Likewise, as previously determined, this Court finds that the employment agreement was then assigned to Calence through its merger with Avnet. The plain language of the Asset Contribution Agreement makes clear that all contracts were assigned from Avnet to the newly merged company. (Dkt. #209, Ex. 21). That agreement assigns "all contracts and agreements to which Avnet is a party" including those contracts set forth in specific schedules. The fact that defendant's contract was not among those listed on the schedules does not exclude it from the agreement. Rather, the agreement references all contracts and agreements, and simply chooses to name some contracts specifically.

In addition, the Court finds the assignment of the agreement lawful. Generally, in Washington, contract rights "may be freely assigned unless forbidden by statute or rendered

ORDER
PAGE – 9

ineffective for public policy reasons. An assignee of a contract 'steps into the shoes of the assignor, and has all of the rights of the assignor.'" *Federal Fin. Co. v. Gerard*, 90 Wn. App. 169, 177 (1998) (citations omitted). Many other jurisdictions find such assignments lawful, as well. *See, e.g., Special Products Mfg., Inc. v. Douglass*, 159 A.D.2d 847, 849 (N.Y. App. Div. 1990) (explaining that "[w]hen the original parties to an agreement so intend, a covenant not to compete is freely assignable."); *Gill v. Poe & Brown of Ga.*, 241 Ga. App. 580, 582 (Ga. Ct. App. 1999) (finding no merit in plaintiff's claim that the non-solicitation agreement could not be assigned without his consent). Accordingly, the Court agrees with plaintiff that plaintiff had an enforceable agreement with defendant.[2]

As discussed above, there are genuine issues of material fact with respect to whether defendant solicited or aided in soliciting any of the other employees to breach their own employment agreements. There are also issues of fact with respect to whether defendant improperly interfered with customer contracts. Accordingly, the Court finds that summary judgment in favor of defendant on this claim is not appropriate.

**I. Breach of Duty of Loyalty and Fiduciary Duty**

Plaintiff next alleges that defendant breached his duty of loyalty and fiduciary duties to Calence by, among other things, entering into a conspiracy with corporate defendants, misappropriating Calence's valuable confidential information and customer relationships, and interfering with Calence's contractual relationships with its employees and customers. (Dkt. #127 at 22).

As an initial matter, the Court finds that the conspiracy allegation may not support this

---

[2] Interestingly, the same employment agreement undermines plaintiff's arguments that a breach of contract claim can be based on an Employee Handbook. Indeed, defendant's agreement expressly states that "handbooks and all other written and oral material provided . . . is intended for information purposes only. Neither it, nor company practices, nor other communications create an employment contract or term of employment." (Dkt. #203, Ex. A). Thus, the Court finds that plaintiff's breach of contract claim against this defendant based on any alleged breach of an employee handbook or other written material must fail.

ORDER
PAGE – 10

claim, as the Court has already determined above that there is no evidence to support the conspiracy claim.

Defendant concedes that he had a duty to refrain from soliciting employees; however, he argues, there is no evidence that he did so. For the reasons set forth above, the Court has already determined that there are genuine issues of material fact with respect to whether defendant solicited or aided in soliciting any of the other employees to breach their own employment agreements. Accordingly, the Court finds that summary judgment in favor of defendant on this claim is not appropriate.

**J. Conversion and Replevin**

Plaintiff next alleges that defendant has "appropriated Calence's confidential information without Calence's knowledge and consent, and without legal justification" and that defendant is "using and will use this information to harm Calence and benefit Defendants." (Dkt. #127 at 23). Plaintiff apparently bases its claim against defendant on his possession of information he downloaded onto his Blackberry device. That information was subsequently returned to defendants' counsel in the course of litigation in this Court.

Defendant argues that a replevin claim cannot succeed because there is no evidence that he continues to possess any of plaintiff's property. In its response, plaintiff ignores that argument, and focuses only on the conversion claim. Therefore, the Court deems the replevin claim conceded, and turns to the conversion claim.

Conversion is the unjustified, willful interference with a chattel which deprives a person entitled to the property of possession. *Meyers Way Dev. Ltd. P'ship v. Univ. Sav. Bank*, 80 Wn. App. 655, 674-75(1996), *review denied*,130 Wn.2d 1015 (1996). "The burden is on the plaintiff to establish ownership and a right to possession of the converted property. . . . [T]o maintain a conversion action, the plaintiff need only establish 'some property interest in the goods allegedly converted.'" *Id.* at 675 (citations omitted). Plaintiff's sole basis for its conversion claim against defendant appears to be the information downloaded onto defendant's

Blackberry device, which was then allegedly downloaded onto defendant's work computer. Plaintiff argues that defendant willfully deprived it of its property during the time he was in possession of that information, and therefore he is liable for any damages that resulted.

Plaintiff fails to produce any evidence that it was not in full possession of the information contained on the Blackberry, even while defendant held it. Such lack of evidence is fatal to plaintiff's claim. Indeed, "an owner [cannot] state a claim for conversion when it retains originals or other copies of documents another improperly uses because the owner is not deprived of the beneficial use of the information." *Furash & Co., Inc. v. McClave*, 130 F. Supp.2d 48, 58 (D.D.C. 2001) (citing *Pearson v. Dodd*, 410 F.2d 701, 706 (D.C. Cir. 1969)). Accordingly, the Court finds that plaintiff's claims fails as a matter of law, and summary judgment in favor of defendant is appropriate.

### K. Unjust Enrichment

Plaintiff next alleges that defendant's "actions have unjustly enriched Dimension, Falk, Abb and Dunlap at the expense of Calence." (Dkt. #127 at 23). "Unjust enrichment occurs when one retains money or benefits which in justice and equity belong to another. The doctrine also applies to retention of property or benefits." *Bailie Communications v. Trend Business Sys.*, 61 Wn. App. 151, 160 (1991).

Defendant argues that plaintiff cannot show he was unjustly enriched, and, to the extent that he received a signing bonus from Dimension Data, he is entitled to such. In response, plaintiff has asserted in conclusory fashion that defendant was unjustly enriched because he received a signing bonus and his legal fees in this action are being paid for by Dimension Data. Plaintiff provides no authority for this assertion. Therefore, the Court finds no basis for an unjust enrichment claim against defendant. Accordingly, the Court agrees with defendant that summary judgment in his favor is appropriate.

### L. Computer Fraud and Abuse Act

Finally, plaintiff alleges that defendant violated two provisions of the Computer Fraud and

Abuse Act – 18 U.S.C. § 1030 (a)(2)(C) and (a)(4). (Dkt. #127 at 23-24). As an initial matter, the Court addresses the scope of the Computer Fraud and Abuse Act. Defendant suggests that this criminal statute was not intended to reach situations such as the instant one. While the Court acknowledges that federal courts around the country appear to be at odds as to the extent of the scope of civil claim under the statute, this Court has generally accepted the notion that Congress intended to encompass actions such as those allegedly taken by defendant. *Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc.*, 119 F. Supp.2d 1121, 1127-29 (W.D. Wash. 2000). The Court is aware of no binding authority to the contrary. Accordingly, the Court proceeds to an analysis of the allegations in this case.

Section 1030(a)(2)(C) punishes those who intentionally access a protected computer without authorization or in excess of his or her authorization, thereby obtaining information, if the conduct involves interstate or foreign communication. *See* 18 U.S.C. § 1030(a)(2)(C). Section (a)(4) punishes those who knowingly and with intent to defraud access a protected computer without authorization or in excess of his or her authorization, and by means of such conduct furthers the intended fraud. *See* 18 U.S.C. § 1030(a)(4). Plaintiff has failed to point to any specific evidence in the record demonstrating that defendant was unauthorized or exceeded his authorization when downloading information onto his Blackberry device. Accordingly, the Court finds summary judgment appropriate with respect to section 1030(a)(2)(C).

However, because questions of fact have been raised with respect to the confidentiality of the information retained on the Blackberry, the Court also finds that genuine questions of fact have been raised with respect to defendant's intent. Section (a)(4) is applicable only to those who access a protected computer with an intent to defraud, and whose acts further the fraud. Defendant has produced evidence that he retained only unprotected customer contacts on his Blackberry, and returned all other information. Whether any information retained was protected is a question for the jury, as explained above. Should the jury determine that defendant actually retained confidential or trade secret information, that fact may lend support to plaintiff's

argument pertaining to intent under section (a)(4).  Accordingly, the Court finds that summary judgment is not appropriate on this claim.

### III.  CONCLUSION

Having considered plaintiff's and defendant's motions for summary judgment, the briefs and evidence in support and opposition of those motions, and the remainder of the record, the Court hereby ORDERS:

(1) Defendant's Motion for Summary Judgment (Dkt. #198) is GRANTED IN PART.  For the reasons set forth above, the Court hereby DISMISSES plaintiff's claims for civil conspiracy, conversion and replevin, and unjust enrichment against defendant Jon Abb.  The Court DISMISSES IN PART plaintiff's claim under the Computer Fraud and Abuse Act.  All other claims against defendant Abb remain pending for resolution at trial

(2) Plaintiff's Motion for Summary Judgment with respect to defendant Abb (Dkt. #218) is DENIED for the reasons discussed above.

(3) The Clerk SHALL direct a copy of this Order to all counsel of record.

DATED this 23rd  day of May, 2007.

                                   RICARDO S. MARTINEZ
                                   UNITED STATES DISTRICT JUDGE